# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

WILLIAM WARREN HUTTER, JR., )
)
)
Plaintiff, )
)
v. )     Case No. CIV-15-207-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

The claimant William Warren Hutter, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 10, 1974, and was thirty-nine years old at the time of the administrative hearing (Tr. 233). He completed the twelfth grade, and has previously worked as a computer tech and parts manager (Tr. 220, 371). The claimant alleges that he has been unable to work since May 29, 2011, due to polycystic kidney disease, colostomy, back problems, and blood pressure (Tr. 370).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on February 17, 2012. His applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 25, 2013 (Tr. 207-223). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work, *i. e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently and stand/walk/sit for six hours in an eight-hour workday, but that he could only occasionally

operate foot controls, climb ramps and stairs, and balance; frequently stoop and crouch; but never climb ladders/ropes/scaffolds, crawl, or have exposure to unprotected heights, moving mechanical parts, or temperature extremes. The ALJ also found he needed a sit/stand option that allowed for a change in position at least every thirty minutes. Furthermore, due to psychologically-based factors, the ALJ found the claimant could perform simple tasks and make simple decisions; have frequent interaction with co-workers, supervisors, and the public; but that time off task would be accommodated by normal workday breaks (Tr. 215). The ALJ further stated that if the claimant could perform light work, he could also perform sedentary work (Tr. 215). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, the sedentary jobs of quality control, film inspector, and dowel inspector (Tr. 220-222).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate his credibility, and (ii) by failing to properly assess his RFC. The Court finds the claimant's second contention persuasive.

The ALJ determined that the claimant had the severe impairments of polycystic kidney disease, hypertension, obesity, mild degenerative disc disease of the lumbar spine, diverticulitis status post colostomy, diabetes mellitus, subjective complaints of degenerative joint disease of the right knee, and history of anxiety disorder (Tr. 210). The relevant medical evidence reflects that the claimant underwent a colostomy procedure in 2008 (Tr. 476). On December 16, 2011, a consultative surgery note

indicated that the claimant had been referred for a colostomy reversal but that significant adhesions may make a reversal lengthy and difficult (Tr. 489). Imaging of the colon on January 24, 2012, revealed a normal pouch, colostomy in the left mid abdomen, and minimal diverticulosis distal portion of the descending colon (Tr. 476). He was scheduled for a flexible endoscopy on February 29, 2012, but that was cancelled and he was referred to his primary care physician for control of his hypertension (Tr. 495).

A state reviewing physician determined that the claimant could perform light work with no postural or manipulative limitations, and found the claimant only partially credible, stating that the light RFC accounted for uncontrolled hypertension, back pain, and morbid obesity (Tr. 596-602). This was affirmed by Dr. Nancy Armstrong on August 30, 2012, when she stated the claimant was capable of light work (Tr. 653). There was no consultative physical examination of the claimant in the record.

At the administrative hearing, the claimant testified that the impairments that precluded him from working include an inability to sit or stand very long in one spot, that he would need to lie down after twenty minutes of sitting, that extremely high blood pressure affects his kidneys, that he has a colostomy bag that requires maintenance every hour to hour and a half, and that he has knee problems and back injuries (Tr. 241-242). When asked which was the worst, the claimant testified that his back injury was the most painful and hardest to deal with, which was aggravated by sitting or standing too long (Tr. 242). He then said that dealing with the colostomy bag was second, stating that it was hard to be in public with it, hard to maintain it, that it had odors, that it caused him pain and currently he had a hernia in the stomach wall as a result (Tr. 244). He stated

that doctors had considered a colostomy reversal, but that his hypertension interfered with such a procedure. He testified that he briefly worked while he had it, but it was a job where he was in and out of places, and he would have to map out where the private restrooms were in order to deal with it, and again explained that it had to be maintained every hour to hour and a half (Tr. 245). When asked if he goes out to eat or to the movies, he stated that he usually does not, because of his colostomy (Tr. 251). The ALJ then turned to the vocational expert (VE) and asked a number of questions regarding the claimant's past work, then proposed a number of hypotheticals (Tr. 256-259). As part of that line of questioning, the ALJ asked if there was work available if, in addition to a number of other limitations, due to chronic pain and symptomatology, the individual required frequent and extended workday breaks, defined as full breaks of twenty-minute duration, in addition to normal workday breaks (Tr. 259). The VE testified that such a limitation would be too excessive and it would preclude jobs at any level (Tr. 259).

In his written opinion, the ALJ summarized the claimant's hearing testimony, including that the claimant "experiences problems with his colostomy every 60-90 minutes," as well as the medical evidence in the record (Tr. 216-220). The ALJ spent a large amount of his opinion at step four detailing his finding that the claimant was not credible, in large part due to drug-seeking behavior (Tr. 216-218). He then stated that he expected to see restrictions by the claimant's treating physicians, but that there were none in the record. Next, the ALJ incorrectly stated that the state reviewing physicians found the claimant could perform light work with frequent balancing; occasional climbing, stooping, crouching, crawling, and kneeling; and he must avoid concentrated exposure to

extreme cold and hazards (Tr. 218). He gave this nonexistent opinion "great weight," with the modifications of only occasionally operating foot controls and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds; occasionally balancing; frequently stooping and crouching; having no exposure to unprotected heights, moving mechanical parts, or temperature extremes; and that he required a sit/stand option that allowed for a change of position at least every thirty minutes (Tr. 218). The ALJ cited no evidence in support of his reasoning for these "modifications" to the RFC. Despite a finding at step two that the claimant's severe impairments included diverticulitis status post colostomy, the ALJ made no mention of the claimant's colostomy at step four other than in the recital of the claimant's testimony, and made no RFC findings relevant to this severe impairment.

The claimant argues that the ALJ's RFC assessment is flawed because it failed to take into account the required maintenance of the claimant's colostomy bag. The Court agrees. *See, e. g.*, *Krebs-Covello v. Colvin*, 2014 WL 4796576, at *8 (M.D. Penn. Sept. 26, 2014) ("[N]one of the activities cited by the ALJ . . . contradict Plaintiff's testimony that she would need to change her colostomy bag several times a day. Like the ALJ in *Smith v. Califano*, the ALJ improperly drew an inference from Plaintiff's transitory activities and this error was compounded by the ALJ's failure to obtain corroborating medical evidence."), *citing* 637 F.2d 968, 971 (3rd Cir. 1981); *Sanford v. Colvin*, 2014 WL 1660076, at *6 (C.D. Cal. Apr. 25, 2014) ("Dr. Gerber's RFC relies on a generalization that a colostomy bag 'usually' does not require additional functional limitations rather than what limitations this particular plaintiff would require. The Court,

moreover, does not read Dr. Gerber's testimony to be saying that Plaintiff's testimony is false or unbelievable. Therefore, because he did not consider Plaintiff's testimony, Dr. Gerber's opinion is inconclusive and insufficient as a basis for disregarding or rejecting Plaintiff's testimony about the number of breaks needed, for omitting any limitations regarding bathroom breaks[,] and for rejecting the VE's opinion that all work is precluded.").

Furthermore, the ALJ erred in formulating the claimant's RFC when he failed to connect the assigned RFC to any evidence in the record, and actually incorrectly recited the state reviewing physician opinions while making "modifications" that were not connected to any treatment record. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). In fact, the ALJ seemed to take great pains to avoid finding the claimant disabled, by, *inter alia*, not even addressing the evidence that the maintenance of the colostomy bag may require too many breaks to allow work at any exertional level. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among

medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984). As in *Jagodzinski*, "[t]he problem in this case is the absence of evidence regarding plaintiff's impairments and limitations[.]" 2013 WL 4849101, at *5. *See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted]. Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**